No. 43,336

BITUMINOUS CASUALTY CORPORATION, *Appellee*, v. AMERICAN FIRE AND CASUALTY COMPANY, *Appellant.*

(387 P. 2d 159)

Opinion filed December 7, 1963.

*Herbert H. Hopper*, of Wichita, argued the cause and was on the brief for the appellant.

*Richard C. Hite*, of Wichita, argued the cause, and *W. A. Kahrs, Robert H. Nelson, H. W. Fanning* and *Darrell D. Kellogg*, all of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action for contribution by one workmen's compensation insurance carrier against another for an award made by the commissioner (now director). The trial court overruled a demurrer lodged against the petition, and the defendant has duly perfected an appeal.

The only question presented is whether the petition states facts sufficient to constitute a cause of action under the theory of contribution, or any other theory.

It has specifically been held that the district courts of this state have jurisdiction over controversies between workmen's compensation insurance carriers, which arise independently of controversies between workmen and employers, over liability under the workmen's compensation act. (*Attebery v. Griffin Construction Co.,* 181 Kan. 450, 312 P. 2d 598; and *United States Fidelity & Guaranty Co. v. Maryland Cas. Co.,* 186 Kan. 637, 352 P. 2d 70.)

The facts stated in the petition, and the exhibits attached and made a part thereof, may be briefly stated as follows:

The Bituminous Casualty Corporation (appellee), hereafter referred to as Bituminous, insured Jack A. Parry, doing business as

Parry and Son Auto Service. The American Fire and Casualty Company (appellant), hereafter referred to as American Fire, insured Bud White, doing business as the Auto Clinic. Both businesses were located in the city of Wichita, Kansas, and both were covered by the Kansas workmen's compensation act.

On June 30, 1960, Clifford E. Fitzwater, a workman with a history of an unstable low back, was accidentally injured while in the course of his employment with Parry, and filed a claim against Bituminous on September 29, 1960, seeking recovery of benefits under the act for an injury consisting of an aggravation of a pre-existing low back condition.

After the first injury sustained with Parry, and before his claim for such injury was heard by the workmen's compensation examiner, it is alleged Fitzwater, while in the employ of White and on October 26 or 27, 1960, accidentally sustained a second injury consisting of another aggravation, or reaggravation, of the same low back condition which was aggravated on June 30, 1960. Thereafter, Fitzwater filed another claim against American Fire for the second injury which occurred while working for White.

On December 2, 1960, the claim against Bituminous was tried and resulted in a maximum award in favor of Fitzwater, granting him $38 per week for 415 weeks plus medical benefits. The award required Bituminous to pay temporary total disability compensation to Fitzwater and to provide him with the care of an orthopedic surgeon. On appeal to the district court of Sedgwick County the award was upheld.

The following is an excerpt from the summary of evidence contained in an exhibit which was attached to and made a part of the petition:

"Mr. Fitzwater, claimant, testified that he was injured on Thursday, June 30, 1960, by pulling out an International transmission with a hard jerk while lying on a creeper on the floor. Claimant felt a severe pain in his low back, but he finished the day's work. Claimant testified that he worked until Saturday. Claimant received $78.12 for 3½ days work. Due to pain in his back, claimant remained inactive around his home. Pain became worse and on Monday, July 4, 1960, Dr. Lee sent some medication for pain to claimant's home. Claimant was admitted to the hospital on July 5 during the early morning hours. Upon release from the hospital claimant was seen by Dr. Shepard, a chiropractor, who treated claimant with heat for low back pain. July 19, 1960, claimant was released for light work. Compensation for temporary total disability was terminated on August 28, 1960, while claimant was able to perform only light work. Claimant further testified that he was unable to find light work.

"Claimant was hospitalized from August 22, 1960, to August 27, for reasons not related to this accident. Dr. Wier saw claimant and Dr. Lee gave claimant's back physical therapy treatments. Claimant worked at Jet Ace Garage from September 5, 1960, to September 15, 1960. Claimant worked at Auto Clinic from October 20, 1960, to October 27, 1960. Severe pain in claimant's back forced him to terminate this employment. Claimant has not worked since October 27, 1960. Claimant complains of severe pain in low back. Dr. Wier advised claimant to lose weight. Claimant desires treatments, as advised by Dr. Lovett. Claimant testified he was compensated for injuries to his back on five different occasions. $154.00 was paid claimant in 1951; and medical bills were paid for claimant in 1956; and $190.00 was paid to claimant in 1957; and $23.00 was paid to claimant in 1958; $40.00 was paid to claimant in 1959. Claimant testified that he was able to perform general mechanic work before the incident of June 30, 1960."

The workmen's compensation commissioner found that the claimant suffered personal injuries by accident *arising out of and in the course of his employment on June 30, 1960, resulting in total disability*. The district court on appeal found "by a preponderance of the evidence that the claimant *sustained personal injury by the accident on June 30, 1960, arising out of and in the course of his employment with respondent, which resulted in temporary total disability from work* until further order of the Commissioner, not to exceed however, a period of 415 weeks." (Emphasis added.)

Bituminous provided Fitzwater with surgery which substantially improved his low back condition. Subsequently, the original award in his favor was modified to require Bituminous to pay Fitzwater compensation based on a 12% permanent partial disability, *and Bituminous satisfied this liability by a lump sum payment,* taking the benefit of a 5% discount.

Fitzwater dismissed his claim against White and American Fire sometime after July 27, 1961.

Bituminous has now instituted this action alleging that Fitzwater's disability and need for medical, surgical and hospital treatment were brought about equally and jointly by the injuries of June 30, 1960, and October 26 or 27, 1960. Bituminous further alleges that American Fire was equally bound by the workmen's compensation act to pay the compensation and provide the medical, surgical and hospital treatment which was paid and provided for solely by Bituminous. Bituminous seeks recovery of one-half of its total payments to Fitzwater from American Fire.

American Fire has appealed from an order of the district court overruling its demurrer to the petition of Bituminous.

Bituminous says this appears to be a case of first impression in Kansas.

A search of the Kansas workmen's compensation act reveals nothing in point. The only statute vaguely touching the question is G. S. 1949, 44-503. It specifically grants subrogation rights, but has no application to the present set of facts. G. S. 1949, 60-3437, is a contribution statute but it has no relation to the Kansas workmen's compensation act. This statute has abrogated the common law rule that there can be no contribution between joint tortfeasors. Here neither of the parties nor the insured employers could be called joint tortfeasors.

Bituminous says its theory of this action is based on contribution. The facts do not justify subrogation, since there is no allegation of a primary obligation and a secondary obligation. (*United States Fidelity & Guaranty Co. v. Maryland Cas. Co.,* supra.) Not being covered by statutory law, the theory of contribution upon which the appellee relies is based upon general principles of equity.

The equitable theory of contribution has previously been recognized in this state. (*Hyland v. Dewey,* 146 Kan. 797, 73 P. 2d 1038; and *Bormaster v. Bormaster,* 177 Kan. 1, 274 P. 2d 757.)

In the *Hyland* case it was said:

"Where several parties are equally bound to the discharge of an obligation, and one is compelled to pay the whole of it, he may have contribution against the others for their ratable proportion of the amount paid; but the mere fact that a person has been benefited by another is not of itself sufficient to require contribution." (Syl. ¶ 3.)

The principle of equity upon which the right of contribution is founded is further clarified in 18 C. J. S., Contribution, § 3, in the following language:

". . . the principle of equity on which the right of contribution is founded can apply only in cases where the situations of the parties are equal, for equality among persons whose situations are not equal is not equitable. Within the meaning of this rule, the situations of the parties are equal when the parties are under a common burden or liability. It is immaterial whether such liability is joint or joint and several; but where parties are severally bound for a specific portion of a debt as principals, and one pays more than he is bound for, he is entitled to no contribution from the others for such excess. Neither does it matter whether the parties are bound by the same or by separate instruments, or whether they knew of each other's engagements or not, nor whether they are liable in the same or different amounts, provided their obligation is assumed in respect to one and the same transaction. . . ." (pp. 4, 5.)

Similarly, the definition in 13 Am. Jur., Contribution, § 2, is stated:

"Contribution is defined as a payment made by each, or by any, of several having a common interest or liability of his share in the loss suffered or in the money necessarily paid by one of the parties in behalf of the others. Contribution is unlike indemnity in that the latter springs from contract, express or implied. Contribution imports the idea of equalization of burden, which distinguishes it from indemnity or exoneration and from an equitable right to recover money, all of which may import reimbrusement in full to the party who has satisfied the obligation, on the theory of a primary liability resting on the persons from whom recovery is sought. A person may be entitled to contribution from the equities of the case and yet have no right to indemnity or exoneration because of the absence of any express or implied contract. . . ." (pp. 5, 6.)

There is authority in other jurisdictions for application of the doctrine of contribution to insurers confronted with successive injuries covered by workmen's compensation acts. In 71 C. J., Workmen's Compensation Acts, § 1353, p. 1411, the rule is stated:

". . . Compensation for a single disability resulting from separate accidents occurring under different employers should be equally apportioned between the insurers for the different employers."

In 99 C. J. S., Workmen's Compensation, § 46, p. 237, it is stated:

"Where a compensable disability is in part the result of an accident sustained under a new employer and in part the result of a prior accident sustained under a former employer who is still liable therefor under the compensation statutes, such liability may be apportioned between the two employers, . . ."

Cases tending to support the foregoing propositions for equitable contribution in workmen's compensation cases are *Matter of Anderson v. Babcock & Wilcox Co.,* 256 N. Y. 146, 175 N. E. 654; *Zuk v. McGuire Bros.,* 277 App. Div. 956, 99 N. Y. S. 2d 617; *Employer's Casualty Co. v. United States Fidelity & Guaranty Co.,* 214 Ark. 40, 214 S. W. 2d 774; and *Marsolek v. Miller Waste Mills,* 244 Minn. 55, 69 N. W. 2d 617.

Massachusetts and Michigan take a contrary view. These states follow the practice of placing full liability upon the insurer covering the risk at the time of the most recent injury. (See, 2 Larson, The Law of Workmen's Compensation, § 95.12, pp. 472, 473; and 12 Schneider, Workmen's Compensation, § 2503, p. 251, *et seq.*)

Bituminous directs our attention to the fact that the apportionment sought in the instant case is not of the type prohibited by *Cody v. Lewis & West Transit Mix,* 186 Kan. 437, 351 P. 2d 4. There the court held the compensation due an injured workman should not be apportioned, or reduced, because a pre-existing condi-

tion or prior injury contributed to the workman's disability. It was there contended that in computing the amount of compensation to be paid a claimant, who was disabled and drew compensation for a prior accidental back injury under the provisions of the workmen's compensation act, prior to the accident for which the workman later claimed compensation, the trial court was required to apportion the compensation to be allowed for a back injury received in a subsequent accident, percentagewise, according to the proportion of disability caused by the respective injuries. This position was rejected in construing the provisions of G. S. 1959 Supp., 44-511 (4), which were held to indicate, where claimant had suffered a previous disability, that the trial court in determining average earnings, as a basis for determining compensation for his later injury, had the right and duty to fix such amount as would reasonably represent his earning capacity at the time of the later injury in the employment in which he was then working.

Bituminous relies on the following rules: (1) There is no standard of health necessary to bring a workman under the workmen's compensation act, and accidental injuries are compensable thereunder where the accident only serves to aggravate a pre-existing condition. (*Kronig v. Nolan Motor Co.*, 186 Kan. 534, 351 P. 2d 1; and *Pence v. Centex Construction Co.*, 189 Kan. 718, 371 P. 2d 100); and (2) where a pre-existing disease, condition or prior injury has been materially aggravated by accidental injury, the compensation award should not be apportioned according to the contribution of the pre-existing condition and the accident. (*Johnson v. Skelly Oil Co.*, 181 Kan. 655, 312 P. 2d 1076.)

By reason of the foregoing propositions of law, affirmed in the *Cody* case, supra, Bituminous argues the second injury would have been material as a defense to a claim on the first injury, only if it could have shown Fitzwater's disability resulted solely from the second injury; that it would not have been a defense to prove only that American Fire was also liable to Fitzwater because of the second injury.

In other words, what Bituminous seems to say is that *if* Fitzwater's claim for compensation based on the alleged second injury had been successfully prosecuted, Fitzwater could have recovered an award for total temporary disability, just as it did against Bituminous, and by reason thereof, the parties to this action are equally liable; and therefore, in equity, Bituminous is entitled to contribution from American Fire.

Upon the controlling facts alleged in the petition, we think it unnecessary to pass upon the doctrine of equitable contribution asserted in the supposititious case above argued by Bituminous.

The difficulty with the position of Bituminous is that it ignores the essential facts in the pleading. The workmen's compensation claim prosecuted to completion by Fitzwater was the so-called first injury claim founded upon an accidental injury sustained June 30, 1960. Parry, the respondent, and Bituminous, the insurance carrier, were parties to this proceeding. It was alleged Fitzwater filed a claim for the second accidental injury sustained on October 26 or 27, 1960, while in the employ of White. But the pleading further discloses *this claim was dismissed*, and we are not at liberty to speculate as to the reason for such dismissal.

The petition incorporated by reference various exhibits, including the award for medical payments and disability resulting from the accidental injury sustained June 30, 1960. It set forth a summary of the evidence, and the findings of the commissioner. It also incorporated by reference the journal entry of the district court on appeal, and a copy of the award as modified.

These documents refute the general allegation in the petition which concludes that the disability of Fitzwater "was caused equally and jointly by the injuries sustained by Fitzwater on June 26, 1960, and October 26 or 27, 1960." These specific documents relied upon control the general conclusions alleged. The examiner specifically found Fitzwater suffered personal injuries by accident arising out of and in the course of his employment on June 30, 1960, resulting in total disability. On appeal the district court made the same finding. It also said the injury on June 30, 1960, resulted in temporary total disability from work.

A look beyond these findings to a summary of the evidence discloses that such findings were amply supported by the evidence. A portion of Fitzwater's testimony, as summarized, has heretofore been quoted.

Dr. Lies, a medical doctor and general practitioner, examined Fitzwater on October 17, 1960 (before the alleged second injury), and said claimant complained of low back pain. The doctor said the pain radiated into the left leg, with inability to move freely in the lower back, thighs and hips. The doctor found muscle spasm about claimant's lower back, lumbar and gluteal muscles. On October 28, 1960, claimant was given medication and ultrasound therapy. His diagnosis was a disc syndrome between lumbar 4 and

lumbar 5. He said the disc between lumbar 4 and lumbar 5 is degenerating and there is an arthritic process at that level. He recommended surgery.

Dr. Lovett, an expert orthopedic surgeon, examined claimant on October 29, 1960. The claimant gave a history of being injured on June 30, 1960, while pulling a transmission out of a car. After hospitalization for a week claimant was released. Claimant gave a history stating he worked for Jet Ace Garage from October 5, 1960, to October 15, 1960, and on October 27, 1960, claimant bent over and raised up, and in doing so moved a small object on the floor, causing pain in claimant's back. Examination revealed the same symptoms as those stated by Dr. Lies. He advised stabilization surgery.

Dr. Malone, an orthopedic surgeon and a witness for respondent, examined claimant August 16, 1960, and August 26, 1960. Examination was in connection with claimant's complaint of a back injury on June 30, 1960. The doctor's findings were essentially negative and said he could find no objective findings of an injury within the last sixty or ninety days. On cross-examination he testified that the accident record of claimant may indicate an abnormal back, and on the dates of examination claimant was able to return to work.

One might ask, if Fitzwater was able to perform work as a mechanic at two different garages after his accidental injury on June 30, 1960, how could it be said he was totally temporarily disabled as a result of the injury on June 30, 1960?

The evidence was all before the commissioner and on appeal before the district court. These tribunals were independently entitled to weigh the evidence and make a determination. Presumably, it was determined the subsequent short periods of work only served to prove that claimant was unable to hold a job as a mechanic and perform such work—that claimant's disability resulted from the injury on June 30, 1960. Based upon the evidence as summarized in the pleading this was a permissible finding.

Bituminous, in a position to defend the prosecution of Fitzwater's claim for workmen's compensation on the so-called first injury, is barred by the finding and decision of the district court which became final. This finding negates any liability on the part of American Fire for the disability of the workmen, since it is a finding that the sole and proximate cause of the workman's disability was the accidental injury on June 30, 1960, at which time the workman was employed by Parry.

The exhibits made a part of the petition also disclose that Bituminous complied with the award made and sought and obtained relief under the award by obtaining a modification order. Thus, Bituminous is estopped from denying the validity and conclusiveness of the findings and award.

In conclusion it is held Bituminous has not alleged a cause of action which enables it to now claim contribution from American Fire, based on the theory that the second accident was a proximate cause of, or a contributing factor to, the workman's disability.

The foregoing opinion should not be construed as holding the doctrine of equitable contribution applicable to workmen's compensation cases, where a single disability results from separate accidents under different employers. The controlling statutes of foreign jurisdictions which adhere to such rule have not been analyzed, and we expressly refrain from passing upon this matter because the confronting facts and circumstances presented by the record herein do not force a decision on the point.

We hold the trial court erred in overruling the demurrer lodged against the petition. The judgment of the lower court is reversed.