(599 P.2d 1021)

No. 50,245

Midwest Mutual Insurance Company, *Appellee,* v. Farmers Insurance Company, Inc., *Appellant.*

Opinion filed September 21, 1979.

*J. H. Eschmann,* of Ascough, Bausch, Eschmann, of Topeka, for the appellant.

*J. Franklin Hummer,* of Davis, Unrein and Hummer, of Topeka, for the appellee.

Before Foth, C.J., Rees and Swinehart, JJ.

Foth, C.J.: This is an action by one insurance company against another for contribution to a settlement of an uninsured motorist claim. The facts were stipulated in the trial court and the case was submitted on the stipulation. The trial court ordered contribution, and the defendant insurer appeals.

Plaintiff Midwest Mutual Insurance Company issued a liability policy on a motorcycle owned by Kenneth R. Walton. The policy contained an uninsured motorist endorsement with a $15,000 limit for personal injuries to any one person. Defendant Farmers Insurance Company, Inc., issued two policies to Walton, covering an automobile and a truck owned by him. Each of Farmers'

policies also provided uninsured motorist coverage in the same amount as Midwest's.

In November, 1973, when all three policies were in effect, Walton collided with an uninsured motorist while riding the motorcycle. Midwest settled with Walton for $13,500. There is no suggestion that the settlement was not reasonable or prudent. It later collected $1,000 from the uninsured motorist, and in this suit sought contribution to its net payment of $12,500. The trial court ordered contribution in proportion to the limits of the three policies, rendering judgment against Farmers for ⅔ of the settlement.[*]

On appeal Farmers advances five arguments. Two may be dealt with summarily, as preliminary matters. First, Farmers would apply an exclusion in each policy purporting to make the policy inapplicable to injuries sustained while occupying a vehicle "owned by the insured." Since Walton was riding the "owned" motorcycle, it says, he had no coverage under either of the policies written on his other two vehicles. This argument, we think, is effectively answered by *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 517 P.2d 173 (1973). The court there held that an exclusion virtually identical to the one relied on here was void as an impermissible attempt to dilute the coverage mandated by the statute. While there the insured was *struck* by an "owned" vehicle and here he was *occupying* one, the principle is the same. If anything, the case for voiding the clause is stronger here, since even the "free ride" argument rejected in that case can't be made here, where the owned vehicle was insured. And see, *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 549 P.2d 1354 (1976), holding the named insured to be covered while occupying an owned vehicle despite a policy definition of "insured" limiting the term to one occupying the described vehicle or a non-owned vehicle.

Second, Farmers argues that in the absence of privity of contract (undoubtedly lacking), Midwest's only remedy is by subrogation against the tortfeasor. This argument misconceives the doctrine of contribution. That doctrine is based on general principles of equity, and is a remedy available to one who is compelled to bear more than his fair share of a common burden or liability to recover from the others their ratable proportion of the amount paid by him. *American States Ins. Co. v. Hartford Ac-*

---

[*] Recited in the journal entry to be $8,333.32.

*cident & Indemnity Co.,* 218 Kan. 563, 545 P.2d 399 (1976); *Bituminous Casualty Corporation v. American Fire & Casualty Co.,* 192 Kan. 233, 236, 387 P.2d 159 (1963). The doctrine is distinct from subrogation and does not depend on privity of contract. *Cf. Bituminous Casualty Corporation v. American Fire & Casualty Co.,* 192 Kan. at 236-7.

We turn, then, to the underlying issue, *i.e.,* whether the doctrine of contribution applies at all. In *American States Ins. Co.,* 218 Kan. at 571-2 we find the latest exposition of the doctrine in this state:

"The doctrine of equitable contribution has long been recognized by this court as a remedy available to one who is compelled to bear more than his fair share of a common burden or liability to recover from the others their ratable proportion of the amount paid by him. (*Bituminous Casualty Corporation v. American Fire & Casualty Co.,* 192 Kan. 233, 387 P.2d 159.) It is a principle of equity applicable only where the situations of the parties are equal under a common liability or burden. (18 Am. Jur. 2d, Contribution, § 1, p. 6.) Between insurers, it is generally a prerequisite to enforcing contribution that their policies insure the same interests. (*New Hampshire Ins. Co. v. American Employers Ins. Co.,* 208 Kan. 532, 492 P.2d 1322; 16 Couch on Insurance 2d, § 62:161, p. 570.)"

The question here is whether the policies of Midwest and Farmers "insure the same interests."

The nature of uninsured motorist coverage has been extensively discussed in our cases. It "is not actually liability insurance, but more closely resembles limited accident insurance. It insures against losses occasioned by a limited group of tort-feasors." *Forrester,* 213 Kan. at 448. The coverage provided a named insured by such insurance is not tied or limited to actual occupancy of a particular vehicle. Uninsured motorist insurance "provides the named insured with two kinds of coverage: While he is in his insured automobile, and wherever else he may happen to be when he suffers bodily injury due to an uninsured motorist." *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 791, 457 P.2d 34 (1969).

The Farmers' policies and the Midwest policy all three provide uninsured motorist coverage to Walton as the named insured. They all extend coverage to Walton while he is occupying *any* of his insured automobiles, and wherever else he may happen to be when he suffers bodily injury due to an uninsured motorist. On oral argument Farmers conceded that contribution would be proper if Walton had been hit as a pedestrian. Further, if the

motorcycle had not been insured at all, under *Forrester* Farmers would have been liable for the entire loss. It seems clear, and we hold, that both insurers share a common obligation and the doctrine of equitable contribution is applicable.

Farmers' final two points, which we shall consider together, come down to an argument that even if its policies afforded coverage, its coverage was "excess" while Midwest's was "primary." In support of its position Farmers cites a number of cases from other jurisdictions construing "other insurance" clauses. They are largely collected in an annotation at 28 A.L.R.3d 551. In addition, it seeks to limit *Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, 512 P.2d 507 (1973), and similar cases, to a holding that "other insurance" clauses are void only to the extent that they prohibit such "stacking" as may be required to fully compensate the insured, within the aggregate limits of the applicable policies. Where, as here, damages are within the limits of one policy, Farmers argues that the public policy rationale underlying our cases is fully met by applying its "other insurance" clause to the extent that it establishes priority of payment. Under this theory, the Midwest policy on the motorcycle would be primary coverage, and only if the damages exceeded the limits of that policy would the insured be able to reach Farmers' policies. The insured would receive the full protection bargained and paid for, but between insurers priority would be established according to the terms of the respective policies.

In this case, however, we are not called upon to either accept or reject this argument because the structure of the policy and the language employed by Farmers simply doesn't bring it into play. Farmers' "other insurance" provision reads:

"Coverage C

"With respect to bodily injury *to an insured while occupying an automobile not owned by the named insured,* Uninsured Motorists Coverage shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the Company shall not be liable for a greater proportion of any loss to which this Uninsured Motorist Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance." Emphasis added.

As may be seen, the first paragraph contains a common "excess-escape" clause. By its terms it applies only when the insured is occupying a vehicle "not owned by the named insured." Here the motorcycle was owned by the named insured; hence that paragraph has no applicability at all. The drafters of the Farmers policy did not deem it necessary to deal with an "owned" vehicle in this clause, but were content to rely on the exclusionary clause referred to at the beginning of this opinion to eliminate coverage when the involved vehicle was an "owned" vehicle. That reliance was misplaced, as is demonstrated by *Forrester* and *Van Hoozer*.

The second paragraph of Farmers' "other insurance" provision, the pro rata clause, purports to limit its liability to a pro rata share of one policy limit. It is of the type stricken down in *Van Hoozer*, at least insofar as it attempts to preclude stacking. Once the antistacking element is eliminated, the pro rata clause reaches the same result as is achieved by enforcing contribution. It certainly adds no support to Farmers' claim to be only an excess insurer.

In oral argument Farmers also suggested that it should be an excess insurer as a matter of equity, regardless of the terms of the policies. It offers no authority for the suggestion. As pointed out above, all three policies insure against the same risk, *i.e.*, injuries inflicted by an uninsured motorist regardless of where the insured might be. Under those circumstances equity calls for contribution; the happenstance that he might be occupying one or another of the vehicles he owns is not such a significant operative fact as to call for a different result from a court of equity.

Affirmed.