**GREAT WEST CASUALTY COMPANY, Plaintiff,**

v.

**CANAL INSURANCE COMPANY, Defendant.**

**No. 85–4094–R.**

United States District Court, D. Kansas.

Feb. 8, 1989.

Allen G. Glendenning, Turner & Boisseau, Great Bend, Kan., for plaintiff.

Stephen M. Kerwick, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a diversity action in which plaintiff Great West Casualty Company seeks equitable contribution from defendant Canal Insurance Company. The parties have filed a joint stipulation of facts and briefs in support of their positions. The court has heard oral argument and is now prepared to rule.

On May 11, 1984, a tractor trailer rig owned by Mangold Trucking was involved in a vehicular accident in Logan County, Kansas. As a result of the accident, Theresa Munkres, a passenger in the Mangold Trucking vehicle, was killed. Both plaintiff Great West and defendant Canal had issued automobile liability policies to Mangold Trucking which were in force at the time of the accident.

Following the accident, the spouse and minor child of Theresa Munkres made claims against Mangold Trucking for damages. Great West then entered into a settlement with the plaintiffs. Great West incurred the following expenses in handling and settling the various claims arising out of Munkres' death: (a) liability payments— $75,221.51; (b) personal injury protection benefits—$8,800.00; (c) attorney's fees in making the settlement—$517.47; and (d) costs and administrative expenses— $4,093.99. Great West then sought contribution of one-half of the aforementioned expenses from Canal. Canal refused to pay one-half of these expenses and this lawsuit resulted. Great West now seeks one-half of all liability payments, personal injury protection benefits, attorney's fees and costs, and administrative expenses incurred by them from Canal as a result of the May 11, 1984 accident. Canal denies coverage for the accident based on an exclusion contained in its policy.

The policies issued by the two companies are similar in most respects but do contain certain different provisions. Both policies contain a limit of liability for damages to bodily injury or death for any one accident of $500,000.00. Both policies also contain endorsements entitled "Endorsements for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980," each of which provides as follows:

It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

The policies also contain similar provisions concerning "Other Insurance." Great West's policy contains the following provision:

3. [T]his policy provides primary insurance for any covered auto you own and excess insurance for any covered auto you don't own.

4. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

Canal's policy contains the following provision:

*Other Insurance:* The insurance afforded by this policy is primary insurance.... When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
...

*Contribution by Limits.* If any of such other insurance does not provide for contribution by equal shares the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

The following exclusion provision contained in Canal's policy provides the basis of the dispute between the parties:

### OCCUPANT HAZARD EXCLUDED

It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability does not apply to Bodily Injury including death at any time resulting therefrom, sustained by any person while in or upon, entering or alighting from the automobile.

It is further agreed that, in the event the company shall, because of provision of the Federal or State statutes become obligated to pay any sum or sums of money because of such bodily injury or death resulting therefrom, the insured agrees to reimburse the company for any and all loss, costs and expenses said or incurred by the company.

Canal argues that this exclusion precludes coverage for the accident in question. Great West asserts that the exclusion is null and void and that Canal must contribute one-half of the monies paid in settlement of the Munkres' lawsuit. Canal responds that the exclusion might be ineffective between them and an innocent member of the public but that it is effective as against its insured. Canal then argues that Great West cannot have greater rights than its insured because its claim derives from the insured. In the alternative, if their policy is found to have some coverage, Canal argues that it should be limited to the minimum statutory requirements which they admit is $100,000.00. Canal then argues that the court must prorate the payments made in the settlement with ⅚th paid by Great West and ⅙th paid by Canal because Great West had coverage

of $500,000.00 while Canal only had coverage of $100,000.00.

The court must begin with an examination of the doctrine of equitable contribution. In the insurance context, contribution is a principle sanctioned in equity, and arises between co-insurers only, permitting one who has paid the whole loss to obtain reimbursement from the other insurers who are also liable for the loss. *American States Insurance Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. 563, 545 P.2d 399 (1976); 6 Appleman, Insurance Law and Practice § 3902, p. 422 (1972). A prerequisite to enforcing contribution between insurers is that their policies insure the same interest. *New Hampshire Insurance Co. v. American Employers Insurance Co.*, 208 Kan. 532, 492 P.2d 1322 (1972); 16 Couch on Insurance 2d § 62:162, p. 631 (1983).

The court finds no support for Canal's position that principles of subrogation should be applied here. The cases relied on by Canal do not support this contention. Canal points to the following statement contained in *American States Insurance Co. v. Hartford Accident & Indemnity Co., supra*, 545 P.2d at 407, as support: "The insurers, who appear as plaintiffs in this action, can stand in no better position than their insureds ..." This statement is taken out of context and provides no help to the defendant. In *American States*, various insurers settled claims against their respective insureds arising from injuries suffered by students who aided volunteer firemen in fighting a grass fire at the request of a school official. These insurers then sought contribution from the defendant insurer who had denied coverage and refused to defend. The Kansas Supreme Court determined that the doctrine of equitable contribution could not be applied in the case because each insurer insured separate and distinct interests. The Court specifically noted that a "coinsurer relationship" did not exist between the insurers. Thus, any suggestion by Canal that the Court adopted subrogation principles is clearly wrong.

Canal next points to statements contained in *Hartford Fire Insurance Co. v. Western Fire Insurance Co.*, 226 Kan. 197, 597 P.2d 622 (1979) and *Farmers Insurance Co. v. Farm Bureau Mutual Insurance Co.*, 227 Kan. 533, 608 P.2d 923 (1980) as support for its argument that principles of subrogation should be applied here. Again, we find that these cases fail to provide support for such a contention. These cases specifically involve the doctrine of subrogation, not the doctrine of equitable contribution. Accordingly, we shall not apply the principles established in those cases here.

Finally, we note that the Kansas courts have specifically rejected the contention urged by the defendant. In *Midwest Mutual Insurance Co. v. Farmers Insurance Co.*, 3 Kan.App.2d 630, 599 P.2d 1021, 1023 (1979), the Kansas Court of Appeals stated: "The doctrine [of equitable contribution] is distinct from subrogation and does not depend on privity of contract." Accordingly, we shall apply solely principles of equitable contribution, not principles of subrogation.

■ The issue then that must be addressed is whether Great West and Canal insured the same interests. There is no dispute, absent the occupant exclusion clause in the Canal policy, that they would be co-insurers insuring the same interest. In addition, there is no dispute that the occupant exclusion clause is void and unenforceable as applied to third parties because it constitutes an impermissible attempt to dilute the coverage mandated by the Kansas Automobile Injury Reparations Act (KAIRA). *See Dewitt v. Young*, 229 Kan. 474, 625 P.2d 478 (1981). The issue that must be resolved is whether the exclusion remains effective here because this is an action by an insurer for equitable contribution, not an action by a third party seeking damages under the policy.

The court finds that this issue has been resolved by the Kansas courts. In *Midwest Mutual Insurance Co. v. Farmers Insurance Co., supra*, the Kansas Court of Appeals was faced with a situation quite similar to this case. There, Midwest Mutual, the plaintiff insurer, sought contribution

from Farmers, another insurer, based on the settlement of an uninsured motorist claim. Midwest Mutual had issued a liability policy on a motorcycle owned by Kenneth Walton. The policy contained an endorsement with a $15,000.00 limit for personal injuries to any one person. Farmers had issued two policies to Walton, covering a truck and an automobile owned by him. Each of the policies issued by Farmers provided uninsured motorist coverage in the same amount as the policy issued by Midwest Mutual. In November, 1973, while all of the policies were in effect, Walton collided with an uninsured motorist while on his motorcycle. Midwest Mutual settled with Walton for $13,500.00. The trial court ordered contribution in proportion to the limits of the three policies, rendering judgment against the defendant for two-thirds of the settlement.

On appeal, Farmers argued that an exclusion in each of its policies precluded coverage and, accordingly, they were not responsible for providing any contribution to Midwest Mutual. The Kansas Court of Appeals rejected this argument because the exclusion in question was void as an impermissible attempt to dilute the coverage mandated by statute. Thus, the court determined, after rejecting several other arguments made by Farmers, that the doctrine of equitable contribution was applicable and that the defendant was responsible for two-thirds of the settlement. The holding of the court applicable to this action is stated as follows:

> Where two or more insurers issue uninsured motorist policies to the same insured, they each insure the same risk. *In the absence of any applicable policy provisions which might be permissible under the controlling statute, if a loss occurs, contribution is required by equity.*

3 Kan.App.2d at 630, Syl. ¶ 4, 599 P.2d 1021 (emphasis added).

Despite the different insurance context, the conclusion of *Midwest Mutual* is applicable here. Both uninsured motorist coverage and that dictated by the KAIRA may not be limited or diluted. Thus, in the absence of any applicable policy provisions which are permissible under the KAIRA, contribution is required by equity when insurers insure the same interest.

The cases relied on by Canal, *Travelers Mutual Casualty Co. v. Herman*, 116 F.2d 151 (8th Cir.1940) and *Prickett v. Hawkeye–Security Insurance Co.*, 282 F.2d 294 (10th Cir.1960), do not provide support for the contention that the exclusion remains effective as between co-insurers. Rather, these cases indicate that exclusions that are void under applicable state law remain effective between the insurer and its insured. Accordingly, we do not find that these cases require different result here. In sum, we conclude that Great West and Canal insured the same interests since the exclusion is null and void and, therefore, the doctrine of equitable contribution is applicable.

■ The court must next consider how the settlement should be prorated between the insurers. Canal has argued alternatively that if the occupant hazard exclusion is deemed void, then its policy provides only the statutory required minimum coverage of $100,000.00 and that this coverage must be prorated with plaintiff's coverage of $500,000.00 under the "other insurance" provisions of each policy. Accordingly, Canal contends that the liability payments made to the Munkres must be prorated with Great West paying ⅚th of the amount and Canal paying ⅙th of the amount.

Canal's argument is based on *Dewitt v. Young, supra*. In *Dewitt*, the Kansas Supreme Court held that household and garage shop exclusions contained in an insurance policy were void and unenforceable because they contravened the statutory requirements imposed by the KAIRA. The court was then faced with the issue of whether the exclusions were void as to the minimum coverage required by statute or whether they extended beyond the statutory minimum and limited any excess coverage provided by the policy. Canal specifically relies upon the following discussion of this issue in *Dewitt* for support of its proration argument:

Generally, it is held that exclusions in liability insurance policies are valid and enforceable as to amounts exceeding coverage required in financial responsibility laws. We adhere to this general rule and find the exclusions void only as to the minimum coverage required by statute. The K.A.I.R.A. does not preclude application of the household and garage shop exclusions or any other exclusion to motor vehicle liability insurance coverage in excess of statutorily required limits.

625 P.2d at 483.

Canal, however, fails to note or discuss the remaining portion of the quote from *Dewitt* which reads as follows: "We do, however, caution that the limited application of such exclusions should be clearly and specifically set forth in the policy." *Id.*

Under the circumstances of this case, we deem it inequitable to conclude that Canal's coverage should be limited to the statutory minimum requirements because of the void exclusion in their policy. Canal has clearly failed to comply with the mandate of *Dewitt* in that the limited application of the exclusion was not "clearly and specifically set forth in the policy." Canal has known or should have known since 1974 that the occupant hazard exclusion is void under the provisions of the KAIRA. Yet, Canal has taken no steps to limit their exclusion only to the amounts in excess of the statutorily required minimums. Accordingly, the court concludes that Canal's coverage in this case is $500,000.00, not the statutory minimum applicable to this case of $100,000.00.

■ Finally, we consider whether Canal is liable for one-half of all of the expenses incurred in settling the Munkres' litigation or only one-half of the amount paid to the Munkres in settlement of their claims. Canal argues that Great West cannot recover from them one-half of the costs and expenses incurred by Great West in investigating, adjusting and settling the claims of the heirs of Theresa Munkres. Canal suggests that such expenses cannot be allowed based on "applicable Kansas case law."

The parties have devoted little attention to this argument. We note that Canal has not challenged the reasonableness of any of the attorney's fees, costs and administrative expenses incurred by Great West in settling the Munkres' litigation and instituting this action. Despite Canal's assertion that applicable case law bars Great West's claim for these expenses, they have failed to identify one case which so holds. The court's brief research into the issue has also failed to turn up any such holding. We believe, based on equitable considerations, that Canal should also be responsible for one-half of these expenses. Great West was forced to incur these expenses because Canal, who was equally at risk, refused to participate and did nothing. The record discloses that Great West notified Canal of the litigation prior to settlement, and Canal informed Great West that a discussion of contribution would be considered after the matter was concluded. Thus, Great West was authorized by Canal to continue efforts to settle, and Canal should be held jointly liable for these expenses. 18 *Am.Jur.2d* Contribution § 21 (1985).

Based upon the foregoing, the court shall enter judgment for the plaintiff and against the defendant in the amount of $44,316.49 plus costs.

IT IS SO ORDERED.